UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

|  |  |
|---|---|
| BRUCE W. FENNIE,<br><br>                    Plaintiff,<br><br>      v.<br><br>E-FUEL CORPORATION,<br><br>                    Defendant. | Case No. 5:13-cv-04687-PSG<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>**(Re: Docket No. 22)** |

Even in the staid world of commercial paper, maturity dates generally rank as among the most staid of contract terms. While one can muster adventurous arguments and debate about all sorts of other terms, what is there to contest about the typical maturity date in a promissory note? Before the date, there is merely an obligation. On or after the date, principal and any interest are owed.

In this suit, however, the normally sedate and sober maturity date of a note takes center stage. Plaintiff Bruce W. Fennie brought this suit against Defendant E-Fuel Corporation alleging two breach of contract claims. Both claims arise from Convertible Promissory Notes executed on

1

September 5, 2008 and on March 17, 2009.[1]  Fennie now moves for summary judgment on both claims.[2]  E-Fuel denies these claims and opposes the motion.[3]  The dispute centers on whether E-Fuel could extend the maturity date of Fennie's notes after those dates passed, permitting E-Fuel to convert its obligation from cash to E-Fuel stock.  Because a reasonable jury could find that E-Fuel's amendment was permitted under the operative terms of the note, the court DENIES Fennie's motion.

## I. BACKGROUND

From 2008 to 2011, E-Fuel issued a series of Convertible Promissory Notes as part of its venture capital financing (2008-2 Convertible Notes Series).[4]  On September 5, 2008, Fennie and E-Fuel executed one of these promissory notes in the amount of $250,000 ("2008 Note") with a maturity date of six months after its execution (March 5, 2009).[5]  On the maturity date, all principal and accrued but unpaid interest on the note becomes "automatically mature and due and payable," unless those amounts were converted to shares of E-Fuel stock on or before the maturity date.[6]  Interest was set at 4% per annum.  On March 17, 2009, after the maturity date passed, Fennie visited the E-Fuel facility and learned that E-Fuel would not repay his 2008 Note at that time.[7]  The same day, Fennie executed a second Convertible Promissory Note in the amount of $100,000 ("2009 Note") with a maturity date of six months after its execution (September 17, 2009).[8]  Both

---

[1] *See* Docket No. 1 at 3-4.

[2] *See* Docket No. 22 at 1.

[3] *See* Docket No. 8 at 3; Docket No. 27.

[4] *See* Docket No. 27 at 4.

[5] *See* Docket No. 27 at 4; Docket No. 27-1, Ex. A at 1.

[6] *See* Docket No. 27-1, Ex. A at 1.

[7] *See* Docket No. 27 at 4-5; Docket No. 28 at 3.

[8] *See* Docket No. 27 at 5; Docket No. 27-2, Ex. B at 1.

the 2008 Note and the 2009 Note contain identical terms, except for the execution date and the principal amounts.[9]

On June 12, 2009, relying on Section 8 of both notes, the holders of Convertible Notes representing at sixty-six and two thirds percent (66 2/3%) of outstanding principal of all 2008-2 Convertible Notes ("Two-thirds Noteholders") consented to amending the maturity date of both notes to June 3, 2011 ("2009 Amendment").[10]  Fennie was one of the holders that consented to this amendment.[11]  Section 8 of both Convertible Notes provides:

> <u>Amendments and Waivers</u>. Any term of this Note may be amended (i) with the written consent of the Company and the Holder, or (ii) with the written consent of the Company and the holders of the 2008-2 Convertible Notes representing at least sixty-six and two-thirds percent (66 2/3%) of the outstanding principal of all 2008-2 Convertible Notes. Any amendment or waiver effected in accordance with this Section 8 shall be binding upon the Company, the Holder and each transferee of the Note.

On June 21, 2011, Fennie sent a letter to E-Fuel demanding payment of both Convertible Notes, asserting that because the maturity date of June 3, 2011 had passed, the amounts were due and payable in full.[12]  Around June 25, 2011, E-Fuel sought an amendment to both Notes, extending the maturity date yet again, this time to June 3, 2013 ("2011 Amendment").[13]  Pursuant to Section 8, E-Fuel once again obtained consent of the holders of notes representing at least sixty-six and two thirds percent (66 2/3%) of the outstanding principal.[14]  But this time, Fennie was not asked for his consent, nor did he provide it.[15]  E-Fuel backdated the 2011 Amendment so that it

---

[9] *See* Docket No. 27-1, Ex. A; Docket No. 27-2, Ex. B.

[10] *See* Docket No. 22 at 2; Docket No. 27 at 6; Docket No. 27-3.  Note that the 2009 Amendment was executed after the 2008 Note's maturity date.

[11] *See* Docket No. 27 at 6.

[12] *See* Docket No. 22 at 3.

[13] *See* Docket No. 22 at 3.

[14] *See* Docket No. 27 at 6.

[15] *See* Docket No. 27 at 6.

would be deemed effective "as of the 2nd day of June 2011".[16] On August 8, 2011, Fennie was provided notice of this amendment.[17] On May 29, 2013, E-Fuel informed Fennie that it would exercise its right under the notes to convert both notes to Series A Preferred Stock.[18]

## II. LEGAL STANDARDS

Summary judgment is appropriate only if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[19] There are two distinct steps to a motion for summary judgment. The moving party bears the initial burden of production by identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a triable issue of material fact.[20] Where the moving party has the burden of proof at trial, he must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party."[21] If the moving party does not bear the burden of proof at trial, however, he may satisfy his burden of proof either by proffering "affirmative evidence negating an element of the non-moving party's claim," or by showing the non-moving party has insufficient evidence to establish an "essential element of the non-moving party's claim."[22] If the moving party meets its initial burden, the burden of production then shifts to the non-moving party, who must then provide specific facts showing a genuine issue of material fact.[23] A material fact is one that might affect

---

[16] *See* Docket No. 27-4, Ex. D.

[17] *See* Docket No. 22 at 3-4.

[18] *See* Docket No. 27 at 7.

[19] Fed. R. Civ. P. 56(a).

[20] *See* Fed. R. Civ. P. 56(c)(1); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("The Federal Rules of Civil Procedure have for almost 50 years authorized motions for summary judgment upon proper showings of the lack of a genuine, triable issue of material fact.").

[21] *Soremekun v. Thrifty Payless, Inc.,* 509 F.3d 978, 984 (9th Cir. 2007).

[22] *Celotex*, 477 U.S. at 331.

[23] *See id.* at 330; *T.W. Elec. Service, Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 630, 630 (9th Cir. 1987).

the outcome of the suit under the governing law.[24]  A dispute is "genuine" if the evidence is such that reasonable minds could differ and find for either party.[25]

At this stage, the court does not weigh conflicting evidence or make credibility determinations.[26]  Thus, in reviewing the record, the court must construe the evidence and the inferences to be drawn from the underlying evidence in the light most favorable to the non-moving party.[27]

### III. DISCUSSION

**A.      No Consideration May be Required for the 2011 Amendment**

Although Fennie couches his primary arguments in various theories, at their root lies the identical question.  When he agreed to include Section 8 in both notes at issue, did Fennie agree to leave to the will of the Two-third Noteholders the authority to modify the maturity date without additional consideration even after the maturity date passed?

Under Cal. Civ. Code § 1698, a written contract "may expressly provide for modification." The general rule is that a modification must be supported by additional consideration, but when a modification "is in accordance with a provision authorizing and setting forth a method for its revision," there is no alteration to begin with.[28]  The parties to a contract also may delegate the

---

[24] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[25] *See Wool v. Tandem Computers, Inc.,* 818 F.2d 1433, 1436 (9th Cir. 1987) ("As to genuineness, the threshold inquiry is 'whether there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" (citing *Anderson*, 477 U.S. at 242; *Grigsby v. CMI Corp.,* 765 F.2d 1369, 1373 (9th Cir. 1985))).

[26] *See Anderson*, 477 U.S. at 255 *(*"Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.").

[27] *See Anderson*, 477 U.S. at 248 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." (citing *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 158-59 (1970))).

[28] *Busch v. Globe Indus.,* 200 Cal. App. 2d 315, 320 (1962).

power to alter or amend the contract.[29] However, whether delegated or not, "a modification made 'in accordance with the terms of the contract' means, at least in part, a modification whose general subject-matter was anticipated when the contract was entered into."[30] While principles of contract interpretation are legal issues for the court to decide,[31] where ambiguity in the language of a contract requires parol evidence to discern the parties' intent, such consideration is an issue of fact for the jury to decide.[32]

Both sides agree the language of Section 8 is key. Section 8 sets forth a method for revising the notes that requires E-Fuel to notice to the note holders in writing and approval by Two-thirds Noteholders. No one seriously debates that before it amended the notes E-Fuel provided notice in writing; nor is there any debate at all that at least 66 2/3% of the holders of the notes approved. But, while nothing in the language of Section 8 specifically permits post-maturity

---

[29] *See Facebook, Inc. v. Pac. Nw. Software*, Inc., 640 F.3d 1034, 1038 (9th Cir. 2011) ("California allows parties to delegate choices over terms, so long as the delegation is constrained by the rest of the contract and subject to the implied covenant of good faith and fair dealing); *Van't Rood v. Cnty. of Santa Clara*, 113 Cal. App. 4th 549, 573 (2003) (holding that a principal cannot be held liable for an actual agent who acts beyond the scope of his actual or ostensible authority)(citations omitted).

[30] *Martin v. Wells Fargo Bank, N.A.*, Case No. 3:12-cv-6030-SI, 2013 WL 6236762, at *2 (N.D. Cal. Dec. 2, 2013) (citing *Badie v. Bank of America,* 67 Cal. App. 4th 779, 792 (1998); *Busch v. Globe Indus.,* 200 Cal. App. 2d 315, 320 (1962)).

[31] *See Kemmis v. McGoldrick*, 767 F.2d 594, 597 (9th Cir. 1985); *Miller v. Safeco Title Insurance Co.*, 758 F.2d 364, 367 (9th Cir. 1985).

[32] *See Wolf v. Superior* Court, 114 Cal. App. 4th 1343, 1351 (2004)

> The interpretation of a contract involves "a two-step process: 'First the court provisionally receives (without actually admitting) all credible evidence concerning the parties' intentions to determine "ambiguity," i.e., whether the language is "reasonably susceptible" to the interpretation urged by a party. If in light of the extrinsic evidence the court decides the language is "reasonably susceptible" to the interpretation urged, the extrinsic evidence is then admitted to aid in the second step—interpreting the contract. The trial court's determination of whether an ambiguity exists is a question of law, subject to independent review on appeal. The trial court's resolution of an ambiguity is also a question of law if no parol evidence is admitted or if the parol evidence is not in conflict. However, where the parol evidence is in conflict, the trial court's resolution of that conflict is a question of fact and must be upheld if supported by substantial evidence. Furthermore, '[w]hen two equally plausible interpretations of the language of a contract may be made . . . parol evidence is admissible to aid in interpreting the agreement, thereby presenting a question of fact which precludes summary judgment if the evidence is contradictory.' (internal citations omitted).

date amendment, nothing prohibits amendment after the maturity date either. At the same time, the overall structure of the agreement requiring cash payment upon maturity absent an earlier conversion to stock certainly suggests that the maturity date meant something in terms of Fennie's right to cash. In light of this ambiguity, the court must consider parol evidence bearing on the subject.

Looking at such evidence in the record in a light most favorable to E-Fuel, as this court must, there is evidence upon which a reasonable jury could rely to find that Fennie understood Section 8 to permit extending the maturity date by an amendment after that date had passed.[33] That evidence comes from Fennie himself. Specifically, on June 12, 2009, and as part of a Two-third Noteholders group, Fennie agreed to a post-maturity date extension with respect to the 2008 Note.[34] A reasonable jury could look at Fennie's conduct and find that he understood perfectly well the power of a two-thirds majority to move the maturity date even after that date has passed.[35]

## B. The 2011 Amendment Was Not a Valid Novation

Fennie separately argues that the 2011 Amendment is an unenforceable novation, substituting the then present right to payment for an option two years in the future to either repay the note at that time or convert the money to stock.[36] The Ninth Circuit has explained:

> Novation is the substitute of a new obligation for an existing one. Novation may be accomplished either by the substitution of a new debtor or a new creditor, or by

---

[33] *Cf. Busch v. Globe Indus.,* 200 Cal. App. 2d 315, 320 (1962) (finding the parties did specifically contemplate the subject-matter of the modification, namely, which requirements Plaintiff would have to meet before he could encroach on Defendant's exclusive distributorship).

[34] *See* Docket No. 22 at 2.

[35] *Cf. Wolf*, 114 Cal. App. 4th at 1356 ("The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties. The mutual intention to which the courts give effect is determined by objective manifestations of the parties' intent, including the words used in the agreement, as well as extrinsic evidence of such objective matters as the surrounding circumstances under which the parties negotiated or entered into the contract; the object, nature and subject matter of the contract; ***and the subsequent conduct of the parties***." (citations omitted) (emphasis added)). For these same reasons, a reasonable jury could find that Fennie waived his right to additional consideration by agreeing to delegate his authority under Section 8.

[36] *See* Docket No. 22 at 11-12.

7
Case No. 5:13-cv-04687-PSG
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

the substitution of a new obligation between the same parties, with intent to extinguish the old obligation. Whereas a modification of a term or a provision of a contract alters only certain portions of the contract, novation wholly extinguishes the earlier contract. The intention of the parties to extinguish the prior obligation and to substitute a new agreement in its place must clearly appear.[37]

It is clear that the 2011 Amendment was not intended to extinguish the 2008 and 2009 Notes; it was merely meant to modify a term within both of those agreements. The effect of the amendment was only to extend the maturity date as it applied to the entire agreement, including E-Fuel's right to convert the principal to stock. No novation occurred.

Fennie's motion for summary judgment is DENIED. A scheduling order will follow.

**IT IS SO ORDERED.**

Dated: April 16, 2014

PAUL S. GREWAL
United States Magistrate Judge

---

[37] *Fanucchi & Limi Farms v. United Agri Products*, 414 F.3d 1075, 1081-82 (9th Cir. 2005) (citations and quotation marks omitted).